AO 91 (Rev 11/11)  Criminal Complaint (approved by AUSA Seth Schlessinger

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America )<br><br>v. )<br><br>Marqueal Bonds )<br><br>)<br><br>)<br>_____ )<br>*Defendant(s)* | Case No. 19-175 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___ 4/3/17 - 10/18/18 ___ in the county of _ ___ Bucks ___ in the ___ Eastern ___ District of ___ Pennsylvania ___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(g) | Engaging in Child Exploitation Enterprise. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel J. Johns, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date·          02/01/2019

_____
*Judge's signature*

City and state:          Philadelphia, Pennsylvania

Hon. Elizabeth T. Hey, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Daniel J. Johns, being first duly sworn, hereby depose and state as follows:

1.       I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) in Philadelphia, Pennsylvania.  I am thus a "federal law enforcement officer," as defined by the Federal Rules of Criminal Procedure.  I have been employed as a Special Agent since March 2007. I am presently assigned to the Philadelphia Division's Crimes Against Children squad, which investigates sex trafficking of children and prostitution investigations, child pornography, and kidnappings, among other violations of federal law.  I have gained experience through training at the FBI Academy, various conferences involving crimes against children, and everyday work related to conducting these types of investigations.

2.       This affidavit is being made in support of the issuance of the attached criminal complaint charging Marqueal BONDS with engaging in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g).

3.       The statements in this affidavit are based in part on my investigation of this matter and on information provided by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause in support of issuance of the attached complaint, I have not included each and every fact known to me concerning this investigation, but rather only those facts that I respectfully submit are necessary in order to establish probable cause.

## STATUTORY AUTHORITY

4.       Title 18, United States Code, Section 2252A(g) prohibits any person from engaging in a child exploitation enterprise.  In turn, Title 18, United States Code, Section 2252A(g)(2)

1

provides that a person engages in a child exploitation enterprise within the meaning of the section if the person violates (among other portions of Title 18) Chapter 110 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons. Chapter 110 of the United States Code prohibits, among other offenses, the production of child pornography (18 U.S.C. § 2251(a)); the advertisement of child pornography (18 U.S.C. § 2251(d)); the distribution or receipt of child pornography (18 U.S.C. § 2252(a)(2)); and the possession of child pornography (18 U.S.C. § 2252(a)(4)(B)). Each of the aforementioned violations is a felony offense.

## PROBABLE CAUSE

5.      On or about May 23, 2017, an FBI online covert employee (OCE) was investigating the production of child pornography on the mobile app "live.me"[1] and browsed to a website called "8ch.net." On 8ch.net, the OCE observed a link to a URL permitting browser-based access to Service A, a computer-based communication service described further below. Next to the link was an image that depicted two females who appeared to be children wearing bikinis.

6.      The OCE clicked on the above link and was re-directed to another URL to a website operated by Service A-2. This particular website was entitled "Service A-1," and the title was accompanied by a thumbnail image of two minor female children kissing each other.

---

[1] Live.me is a social media platform for sharing, creating and viewing live streaming videos. Live.me users can stream live video from mobile platforms like Apple iOS or Google Android. Videos streamed from Live.me users can be viewed through the Live.me mobile applications or an internet browser.

[2] Service A, Service A-1, and similar terms, as well as Username 1 and similar terms, are pseudonyms used in this affidavit in lieu of the actual terms in order to protect the integrity of an ongoing investigation.

2

7.     Service A owns and operates a free-access all in one voice and text chat application and website with the same name that can be accessed over the web. A user creates a Service A account and can then communicate with other Service A users.

8.     Service A users can exchange private messages between each other, participate in chat discussions, and voice chat. Service A users can also create chat rooms, which functions as message boards that can be accessed only by Service A users who have an invitation link. Service A-1, mentioned above, is one such chat room on Service A. Within these chat rooms, users can set up different sub-rooms wherein users can type written text, including links to files stored on external file-storage sites, and also upload files under a particular size limit, which can be viewed by all users of the sub-room. Service A users can share files larger than the limit allowed by providing hyperlinks to file sharing websites. Service A chat rooms can have one or more moderators. Moderators have the ability to manage other users, including but not limited to removing users from the chat rooms, elevating users hierarchically, and granting users additional permissions. The moderators of a chat room can categorize users of the chat rooms into hierarchical groups with customized labels and can configure those groups to give users in each group different levels of access.

9.     The OCE's review of the Service A-1 chat room revealed that the vast majority of its content consisted of discussions about using web cameras and social-media applications to obtain sexually-explicit images and videos of minor children; images and videos of minor children exposing their vaginas, which at times were uploaded to the Service A-1 chat room and its sub-rooms; and links to download child pornography images and videos from external file-storage sites. Most of the children viewed by the OCE appeared to be approximately between the ages of 11 and 17 years old. The Service A-1 page also included some discussion of adults engaging in

sexual activity via web camera. However, the majority of the activity focused on the depiction of minors engaged in sexually explicit activity on web cameras. For example, in the course of a discussion in one sub-room of Service A-1 regarding the merits of utilizing virtual private network (VPN) technology to mask users' IP address and identity, Username 1 commented on April 15, 2017: "Just the fact that we're all hanging in here, which is a chatroom where underaged sexual content is shared around is enough reason for one to get a VPN." Username 1 continued: "Fuck when you download something from dropfile Your ISP can see what you downloaded What if govt authorities read ISPs logfiles."

10.     Based on the OCE's undercover observations on Service A-1, a federal search warrant was issued on or about July 10, 2017, by the Honorable David R. Strawbridge, United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to Service A-1. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of Service A-1, the content of some text chats occurring on Service A-1, and some private messages sent by users of Service A-1.

11.     The Service A-1 chat room was ultimately shut down by Service A. Members of the Service A-1 chat room proceeded to open additional similar chat rooms on Service A, including: Service A-2, Service A-3, Service A-4, and Service A-5. The OCE gained access to Service A-3, Service A-4, and Service A-5. The OCE observed each of these chat rooms contained many of the same users as Service A-1 and were operated for the purpose of discussing, obtaining, and distributing child exploitation material including child pornography files. Service A-5 is the only of the aforementioned Service A chat rooms that is still operating.

12.     Based on the OCE's undercover observations on Service A-2, Service A-3, Service A-4, and Service A-5, a second federal search warrant was issued on or about November 17, 2017,

4

by the Honorable Linda K. Caracappa, Chief United States Magistrate Judge, Eastern District of Pennsylvania, for content stored on Service A's servers related to the aforementioned chat rooms. In response to the search warrant, Service A disclosed to law enforcement officers IP address information for some users of those chat rooms, the content of certain text chats occurring in the chat rooms, and some private messages sent by users of those chat rooms.

13. The OCE observed a user of Service A-5 using the online name Username 12. A review of the search warrant return from Service A and undercover recordings by the OCE revealed, among other activity, the following activity, each involving material that I have reviewed and that, in my opinion, constitutes a depiction of a minor engaged in sexually explicit conduct as defined by federal law:

a. On January 19, 2018, Username 12 posted a link on Service A-5 to a "film strip"-style composite image depicting a minor child removing her pants and underwear, exposing her vagina and masturbating.

b. On June 30, 2018, Username 12 posted the following messages on Service A-5: "It's crazy how after u get done fapping and as soon as u bust ur nut u just start thinking about life and shit… 'why am I fapping to lolis' … why tf do I go so much cp." From my training and experience, including particularly my experience in investigating this enterprise, I know that "fapping" is a reference to masturbating, "lolis" is a reference to minors depicted in child pornography, and "cp" is a reference to child pornography.

c. On July 8, 2018, Username 12 posted a link to a video file stored on Mega.nz – a file-storage site. By following the link, the OCE downloaded the video file and observed that it depicted a minor female exposing her vagina.

d. On July 9, 2018, Username 12 posted another link to a video file stored on

5

Mega.nz. By following the link, the OCE downloaded the video file and observed that it depicted a minor female masturbating.

      e.    On July 11, 2018, Username 12 posted an image directly in the Service A-5 chat room, depicting a minor female exposing her vagina.

      14.    Records from Service A show that Username 12 accessed Service A at all relevant times from a particular IP address serviced by Comcast Communications, and providing Internet access to 8122 S. Marshfield Avenue, Apt. 2, Chicago, Illinois – BONDS' residence.

      15.    On October 18, 2018, a federal search warrant was executed at BONDS' residence. BONDS was present at the time of the search warrant was executed. BONDS admitted using Service A as Username 12, and further having accessed Service A-1 specifically, although only "a few times." BONDS denied recognizing the usernames of several Service A users who were active in the enterprise, although he admitted recognizing a few, including one in particular (Username 8/Username 9), who BONDS described as having been on Service A for a long time and appeared to have been in charge of some of the servers. BONDS admitted being a member of Service A-5, and described its structure, including the various ranks and the additional authority accorded to those occupying high-ranking positions. BONDS initially denied posting links of child pornography, but eventually acknowledged that he posted links in Service A to material stored on Mega.nz, a cloud-based file storage and distribution service based in New Zealand, describing the age of the youngest person depicted in any of his posts as 16 years old. BONDS denied maintaining a sexual interest in children, and said that he posted the links only to maintain good standing with other Service A users, who he thought were "cool." BONDS also identified himself in a photo of himself that he posted in Service A-5 in which he was showing off his hairstyle.

16.     A Samsung Galaxy S7 cell phone was recovered directly from BONDS' front pocket which contained a 32GB Lexar SD card.  The SD card was forensically examined and found to contain numerous child pornography videos, including child pornography files originally streamed over various video-streaming platforms and depicting minor females engaged in the lascivious exhibition of their genitalia and/or masturbating, as well as numerous images of BONDS himself.  The SD card further contained text documents containing hundreds of download links (of the sort frequently exchanged by members of this enterprise), and BONDS' resume.

17.     A Samsung Galaxy S6 cell phone was further recovered from BONDS' bedroom containing numerous images of child pornography, including images of prepubescent children engaged in sex acts with adult males.  This cell phone had a screen-capturing application (AZ Screen Recorder) installed, as well as multiple video-streaming and image-sharing applications.

18.     An external hard drive recovered from a drawer in the dresser located in the closet in BONDS' bedroom was examined.  It was found to contain numerous child pornography files depicting minor females engaged in the lascivious exhibition of their genitalia and/or masturbating, including in a folder making reference to Username 12.  A separate folder titled "Good" contained hundreds of additional child pornography files depicting minor females engaged in the lascivious exhibition of their genitalia and/or masturbating, including an entire folder of child pornography files appearing to have resulted from the download of a single distinctively-named cache of files, a link to which was posted on Service A by another user, who has since been identified and charged separately (Username 4).  The child pornography files located on the external hard drive recovered from BONDS' dresser drawer further included particular child pornography files depicting minor females engaged in the lascivious exhibition of their genitalia and/or masturbating which were also

7

located during the forensic review of devices belonging to other members of the enterprise since identified and charged separately.

## **VENUE**

19. The child exploitation enterprise in which BONDS engaged, as described above, extended at all relevant times to the Eastern District of Pennsylvania. The enterprise was open to members from anywhere in the world, and the child pornography material disseminated by the enterprise was made available to any person able to access Service A, including from the Eastern District of Pennsylvania. Further, the OCE's activities over the various Service A chat rooms comprising the enterprise were conducted in the Eastern District of Pennsylvania. Finally, the investigation has revealed the participation of at least one member of the enterprise who lived in the Eastern District of Pennsylvania and participated in the enterprise from the Eastern District of Pennsylvania, from as early as July 2016 until that member's arrest by federal authorities in February 2018 pursuant to a complaint charging him with engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g).

## **CONCLUSION**

20. Based upon the information above, I respectfully submit that there is probable cause to believe that Marqueal BONDS engaged in a child exploitation enterprise, in violation of Title 18, United States Code Section 2252A(g), in that BONDS violated Chapter 110 of Title 18 of the United States Code as part of a series of felony violations involving three or more separate incidents and more than one victim, as described in paragraph 13 above, and has committed those

8

offenses with three or more other persons. I therefore further respectfully request that the Court

approve the attached arrest warrant charging Marqueal BONDS with that offense.

Daniel J. Johns
Special Agent, Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _____ DAY
OF FEBRUARY, 2019.

HON. ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

9